Okay, the next case, the first case from the argued calendar, is United States v. Atuana and United States v. Adinaran. Ms. Drake, I believe, is up first. Yes, Your Honor. Good morning, and may it please the Court. My name is Jamesa Drake, and I represent Joseph Atuana. With the Court's permission, I'd like to address the first assignment of error in my brief, which pertains to the admission of a letter written by Mr. Atuana's former counsel. In 2014, Mr. Atuana was charged with fourth-degree larceny in state court. His attorney at the time, Mr. Langman, wrote a letter to the prosecutor on the case explaining that Mr. Atuana, quote, was the victim of a much larger scam and was unwittingly used by certain individuals to perpetrate a fraud, unquote. In the letter, Mr. Langman discusses the results of his own investigation and his conclusion that, in fact, a fraud had been guilt, in fact, just the opposite. The letter portrays Mr. Atuana as a victim. Importantly, Mr. Atuana never pleads guilty to fourth-degree larceny or any other species of fraudulent activity in connection with that case. Instead, the case is resolved when he enters a guilty plea to disorderly conduct. We renew the argument made by trial counsel below that the admission of the letter was unduly prejudicial, which, of course, begins with an assessment of whether the letter was probative, and we argue that it's not. This letter was admitted under 404B, and so we begin with the fact that the letter is Mr. Langman's other act. It's not an other act of Mr. Atuana. There's no evidence in the record that Mr. Atuana was aware of or ever endorsed the contents of the letter. But even if we assume that Mr. Atuana was aware of the contents of the letter, the letter does not prove his guilty mind. In fact, it disavows his guilt. It doesn't prove that Mr. Atuana knew that similar conduct was illegal because it says, again, the opposite. Mr. Atuana believed he did nothing wrong. And then, again, this is just whatever... Even assuming that it was error to admit the letter, the government's argument is that it would be harmless in light of all the evidence of guilt, including the text messages describing what your client and the other defendant were doing in real time. What's your response to that? My response to that is to refer the court to the arguments that were made to the district court when the admissibility of this letter was discussed. And so at appendix page... I'm sorry, this is my appendix, Atuana's appendix, page 68, the court, in considering the admissibility, says the government has no insider in this case. There's no cooperating witness. They don't have evidence on the issue of the defendant's intent. Then again, in my appendix, page 81, the court says there's an avalanche of evidence of someone being defrauded, but there's not a comparable avalanche of evidence of intent. And this is picking up on the argument that the government made, my appendix, page 75, where the government says we have no cooperating witnesses. We have no wire calls. We have no other evidence of the defendant's knowledge besides the prior convictions and the letter attendant to those convictions. So while I would certainly agree, and as my statement of facts in the brief indicates, there is plenty of evidence that the government presented about fraud. The government, by its own admission and the district court recognition, the weakness in their case had to do with Mr. Atuana's intent. And the government used this letter, linked this evidence that the jurors could use to fill in that gap that they themselves identified in their case. The problem, we argue, is the way in which they used that letter and the arguments that they made about it. The upshot of the government's argument was once a fraudster, always a fraudster. And that is precisely the type of propensity inference that 404B is designed to prohibit. On top of that, what is unusual about this is that the letter really embodies and speaks to the defense that he was raising in connection with the 2014 case. The jurors in this case should not have been comparing the defense presented in our case to the defense presented in a previous case. That's not what the jurors should have been focused on. The believability of his defense in our case should have been measured against the government presented, I'm sorry, the evidence presented in our case and nothing more. Not what was embodied in Mr. Langevin's letter. Thank you. Thank you. We'll hear next from Mr. Levchuk. Yes, thank you, Your Honor, and may it please the court. Mr. Adeneron's central point is that the district court abused its discretion in failing to conduct a thorough hearing into the actions of defense counsel before determining that Mr. Adeneron had failed to establish good cause to file a post-trial motion raising Fourth Amendment issues. I think the district court's policy was limited to traditional particularity concerns concerning physical space with respect to the search warrant. The court did not address, really, the over-breath of that warrant and its scope with respect to electronically stored information. And in our view, this was critical to finding whether there was good cause to consider the post-trial motion. Mr. Levchuk, it's Judge Nardini. May I ask you a question? Sure. I understand you're trying to make this over-breath argument with respect to the warrant now on appeal. Was that raised, and I understand there was different counsel below, but was that raised by the defendants below? Your Honor, yes, taking into account certain factors. They, at a certain point post-trial, decided to proceed pro se, and so the judge held a hearing. At which there was a, their arguments about their trial counsel were heard, and the hearing transcript is contained in the, our appendix, the Adeneron appendix, starting at page 165. And there was standby counsel appointed for my client, but they were essentially proceeding pro se. And so while they probably didn't use language that a lawyer would use, and were not assisted at all, as the record shows, by standby counsel, who essentially made no noise whatsoever, I think it's fairly within the scope of what they raised below, considering that they were arguing pro se. And so that's the issue really, and we were talking about a residential apartment with numerous individuals residing. The warrant essentially authorized, it's very broad, and I think the description of what it authorizes on pages 136 and 137 of our appendix, and it was all material connection with a violation of the statute, and there's simply no limit. The other thing that counsel didn't do at trial was to ensure that a computer, qualified computer forensic expert, actually even took a look at the large volume of electronically stored information that was produced by the government. And in particular, the, as the court knows, a forensic examiner can determine who logged into a computer at a particular time by matching up communications, looking at logging information, computer systems leave artifacts on a computer which can be interpreted, and it's really essential when- Excuse me, you have one more minute. Thank you. It's really essential when you have a volume of evidence of the sort that is contained in a hard drive produced in a case like this, that a forensic examiner be retained to at least review that evidence and determine whether there are defenses which relate to attribution of who at a particular terminal or using a particular piece of media at the time the message was sent, what logging credentials were used, and many other factors. And none of that was done here. And at the very least, the court should have held a hearing and made more detailed findings about both the scope of the warrant and counsel's failure to retain the master. And I'll reserve my remaining time if the court has no questions. Thank you. We'll hear next from the government. Mr. Folley. May it please the court, my name is Nicholas Folley, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal and conducted the trial and other proceedings below. The defendants in this case were convicted following a fair trial, free of any error. Following trial, the district court afforded the defendants every opportunity to raise any post-trial motions and properly denied those motions following a series of arguments, as well as a hearing. There's no basis to disturb the defendants' convictions on appeal. I'll turn first to Atwana's arguments, and then I'll address Adinoron's. Atwana challenges certain evidentiary rulings that were made at trial, and those challenges are meritless. Focusing on the court's admission of Government Exhibit 607, which was the letter from Atwana's prior attorney to an assistant district attorney in connection with the 2014 prosecution, Atwana presses two arguments here that both should be rejected. One is that that letter was not actually probative 404B evidence, because Atwana claimed in that letter that he was actually a victim and did not acknowledge that he was involved in any criminal conduct. That argument misses the mark, because in that letter, counsel expressly acknowledges that the same conduct was criminal, even if Atwana, at the time he got involved in that conduct, did not know that it was criminal. So, it provided powerful evidence that, at least as of the date of that letter, which was directly in the middle of the charged conspiracy that was on trial, Atwana knew or learned that his activity was criminal, but then continued to be involved in the same and similar fraudulent conduct, and therefore,  Atwana also raises the argument that that letter did not contain Atwana's words and was, in fact, just representations that were made by his lawyer. The face of the letter makes it clear that Mr. Atwana was consulted and contacted in connection with that letter. For example, it states that Atwana was contacted by what he believed was a call center that presented him with the opportunity to be given a commission from the sale of medical benefits from a medical benefits program. That type of information is information that had to have come directly from Atwana, and therefore, that argument should also be rejected. As we noted in our brief, even if there was error in the admission of any of these exhibits, that error was harmless. Contrary to the arguments presented today, that there was no other evidence on knowledge and intent, the record makes it clear that there was strong, powerful evidence, including the defendant's own words where they communicated with each other about the scheme, including texts where they discussed cover stories for their fake businesses, the reversals of funds out of their bank accounts, as well as text messages discussing the impersonation of a victim's purported business manager, which was used in order to try to trick a bank to send a large wire transfer. I'll turn now to the arguments that are raised by Adineron in his motion for a new trial and appeal. It's clear from the objective evidence that's before this court that Adineron's suppression arguments lack merit, which is fatal to any Strickland claim, because he cannot establish any prejudice. I'll begin first with Adineron's overbreadth argument. He argues that the warrant authorized the seizure of, quote, fruits and or instrumentalities of violations of Title 18, United States Code, Section 1349, end quote, and was therefore overly broad. This is simply incorrect. This provision of the warrant serves an entirely different purpose, which is to identify the specific offenses for which the government has established probable cause, which is one of the requirements for a sufficiently particularized warrant. The provisions that directly follow contain a list of the particular evidence, fruits, and or instrumentalities that can be seized. Each of those nine items on that list was supported by probable cause upon which the warrant was based. The warrant was therefore not overly broad. Adineron also argues that the warrant was not sufficiently particular. This argument was properly rejected by the district court. At the outset, the warrant plainly satisfies the basic elements of the particularity requirement. It lists the charged crimes, describes the place to be searched, and specifies the items to be seized by the relation to the designated crimes as required under Second Circuit law. Adineron also argues that the warrant should not have if necessary to locate responsive data to the warrant. This argument, which confuses the warrant's breadth with its particularity, was soundly rejected by the Second Circuit in the United States v. Albright case. As the court explained there, a warrant authorizing the government to search an entire computer for a wide range of potentially relevant material might be broad, but it does not violate the particularity requirement. This is analogous to a warrant that allows the government to search a drug dealer's entire home where there is probable cause to believe that evidence relevant to that drug activity may be found anywhere in the residence. Neither scenario is a foul of the particularity requirement. Finally, I'll just note that a timely suppression motion would have been denied also because the agents relied in good faith on the warrant, which was supported by probable cause and signed by a magistrate judge. For all of these reasons, the panel should affirm the judgment and conviction. If there are no further questions, we'll rest on our brief. Thank you, Mr. Fawley. Mr. Lovechuck, you have one minute for a rebuttal. Thank you, Your Honor. Just to touch on Mr. Fawley's last point, I mean, he is comparing search of physical space with search of ESI, and I don't believe with respect that that is a valid comparison. In our reply brief, we cite Galpin on page four, which essentially says, you know, property to be searched is a computer hard drive. The particularity requirement assumes greater importance. Mr. Fawley also referred to the nine categories of evidence to be seen on pages 121 of our appendix, the Adeneron appendix. But that is, those categories are simply, this is standard language boilerplate, if the court will, probably used in numerous applications out of the Southern District of New York. And finally, getting back, I just wanted to emphasize the specificity of the warrant was raised. And if you look at the court's discussion of the issue, I'm looking right now at page A213 of our appendix, I believe the court took the particularity issue to be raised. And while the defendants didn't specifically focus on ESI versus other types of particularity due to their lack of sophistication, I believe that giving them some latitude for appearing pro se at this point, that would be sufficient. And the court's treatment of the issue would be sufficient to say that it didn't raise. And unless the court has further questions, I have nothing further. Thank you, counsel. We'll take the case under advisement.